UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

HALEY J. TURNAGE                                                                                      PLAINTIFF

VERSUS                                                                            NO. 1:06-CV-00091-LG-RHW

COMMISSIONER OF SOCIAL SECURITY                                                           DEFENDANT

### PROPOSED FINDINGS OF FACT AND RECOMMENDATION

### Procedural History and Factual Background

On November 7, 2002, Haley J. Turnage (claimant) filed an application for Child's Benefits and Supplemental Security Income (SSI) benefits pursuant to Titles II & XVI of the Social Security Act. Claimant alleged that she is disabled due to bipolar disorder, post-traumatic stress disorder, impulse disorder, depression, dyslexia, colitis, and attention deficit hyperactivity disorder. R. 72. The Social Security Administration (SSA) denied this initial application and a request for reconsideration. R. 584-85. Claimant timely filed a request for a hearing, which was held on November 18, 2004. R. 25, 27. The Administrative Law Judge (ALJ) ruled that the claimant was not disabled within the meaning of the Social Security Act. R. 10-18. Finally, the claimant applied to the Appeals Council which affirmed the decision of the ALJ on December 9, 2005. R. 3-6.

Pending before the Court is claimant's [11] Motion to Reverse or Remand the Decision of the Secretary of the Social Security Administration. In the instant motion, claimant argues that her mental difficulties qualify her as "disabled" within the meaning of the Social Security Act and urges this court to find that the ALJ ruled otherwise in error. Specifically, the claimant contends that the decision of the ALJ violated the treating physician rule and that the ALJ's findings are clearly erroneous and not founded upon substantial evidence. In addition, the

claimant asks for costs and attorney's fees pursuant to 28 U.S.C. § 2412.

## Factual Backgroun

The claimant asserts that she has been disabled since July 30, 2000 due to bipolar disorder, post-traumatic stress disorder, impulse control disorder, depression, dyslexia, colitis, and attention deficit hyperactivity disorder.  R. 10.  She also claims exertional restrictions due to degenerative disc disease, pain in the ankles and toes, and rheumatoid arthritis, R. 12.; however, only her non-exertional limitations are at issue in this appeal.  According to the record she started drinking at age six and began smoking marijuana at fifteen.  R. 566.  When she was nine years old she was tied up, burned with cigarettes, and raped.  R. 43.  This experience led to her first visit to a psychiatric hospital. *Id.*  That visit was among a total of approximately 10-14 instances where the claimant received treatment at mental hospitals.  R. 36.

According to the testimony of the claimant's mother, the claimant exhibits antisocial behavior such an uncontrollable temper that includes being loud, cursing, and being violent and explosive.  R. 45  She is aggressive towards her family and dog and talks about injuring or killing people while in the presence of her mother. *Id.*  She bathes at least three times a day, and changes clothes up to 20 times per day.  R. 44-45.

The claimant has not held viable employment for more than a short period of time. R. 48-49.  She bagged groceries when she was fifteen and worked on a farm for about three months before she turned eighteen.  R. 53.  It is not clear whether she quit or was terminated from those jobs.  R. 48-49.  Her mother claims that she cannot obtain or maintain employment now due to her antisocial behavior.  R.49.  The claimant also has a history of learning disability and memory deficits which could preclude her from maintaining employment.

Since the date of her claimed disability, the Plaintiff has had various interactions with mental health professionals. On March 5, 2002, the Plaintiff was admitted to Gulf Oaks Hospital (Gulf Oaks) while out of control and hostile. R. 213. She was examined by Sheridan Tucker, M.D. *Id.* The claimant tested positive for cocaine, marijuana, and crystal methamphetamine. *Id.* While at the hospital, she was administered Navane which was followed by marked improvement in the claimant's mood and judgment. *Id.* Dr. Tucker noted in the discharge summary that her Global Assessment of Functioning increased from 15-20 at admission to 80-85 upon discharge. R. 217.

On January 23, 2003, she visited with John Stoudenmire, Ph.D. at the Commissioner's request. R. 240. He noted that he had seen the claimant on one previous occasion about seven or eight years before. R. 242. After a comprehensive mental status examination he concluded that the claimant exhibited traits for polysubstance abuse, intermittent explosive disorder, learning disability, and personality disorder. R. 243. He noted that he believed her biggest problem was polysubstance abuse and that she was not forthcoming about her history of drug and alcohol abuse. R. 242. She did admit to smoking marijuana within the past month. *Id.*

On August 22, 2003, the claimant was admitted to Forrest General Hospital (Pine Grove Recovery Center) following manic behavior. R. 566. Claimant admitted to consuming 750mL per day of alcohol and smoking marijuana and crack daily. *Id.*

On August 26, 2004, the claimant was examined by Bianca Harbison, M.D. for the first time. R. 579. Dr. Harbison has been identified by the claimant as her treating physician. During the examination, Dr. Harbison noted that the claimant demonstrated unstable mood, dissociative episodes, and little regard for other persons or property and concluded that she had antisocial

personality disorder. R. 579. Dr. Harbison was aware of the claimant's alcohol and drug abuse, but claimant related that she had been clean for over a year at that time. *Id.* Dr. Harbison never came to any distinguishable conclusions concerning the claimants drug abuse. *Id.*

The claimant was scheduled for another appointment on September 13, 2004, but, it was cancelled due to evacuation for Hurricane Ivan. R. 578. They met for the final time on October 20, 2004, when Dr. Harbison noticed marked improvement in the claimant's mood and behavior. She finally diagnosed the claimant with bipolar disorder. R. 577. Following this visit, Dr. Harbison issued a statement to the claimant's representative concluding that due to her history of mood swings and violence, the claimant could not work with the public or even co-workers. R. 354.

The Social Security Administration conducted a hearing on this matter on November 18, 2004. R. 19. The claimant, the claimant's mother, and a vocational expert testified at the hearing. R. 28. Based on the testimony of the claimant and her mother and all applicable medical records available to the SSA, the ALJ presented the vocational expert with two hypothetical questions. R. 61. Based on the ALJ's interpretation of the claimant's mental and physical ailments, the vocational expert determined that the claimant would qualify to work at least three jobs existent in substantial numbers in the community. R. 61-62. Therefore, the ALJ concluded that the claimant was not disabled according to the standards set forth in the Social Security Act. R. 18.

## **Standard of Review**

The federal district court reviews the Commissioner's decision only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner

used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the Commissioner's findings are supported by substantial evidence, they must be affirmed. *Martinez*, 64 F.3d at 173. "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). The court does not re-weigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's decision. *Brown*, 192 F.3d at 496. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Id.* (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). Determinations of credibility rest with the ALJ as the trier of fact. *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981).

The claimant has the burden of proving she has a medically determinable mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity. 42 U.S.C. § 423 (d)(1) (A). The ALJ uses a five-step sequential process for evaluating claims of disability. 20 C.F.R. § 404.1520. In order for the ALJ to find that the claimant is disabled he must decide that (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment in Appendix 1 of the Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work. *Id.*

The claimant bears the burden of proof on the first four steps, but the burden shifts to the SSA for the fifth criterion. Therefore, if the claimant proves that he cannot perform past relevant work, then the SSA must show that the claimant can perform another occupation that exists in

the national economy. *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Once the SSA makes this showing, the burden shifts back to the claimant to prove otherwise. *Id*.

## Law and Analysis

The central issue in this appeal is the ALJ's finding that the claimant was qualified to perform some kind of work in the national economy. This conclusion was contingent upon a finding that the claimant had a long history of drug and alcohol abuse. The ALJ concluded:

> that if the effects of her polysubstance abuse are considered, [she] is likely not capable of sustaining work activity on a regular basis, and thus [is] disabled within the meaning of the Act. If, however, she were to stop using drugs and alcohol, she would be capable of work without exertional limitation. R. 12.

The ALJ's conclusion finds support in Dr. Stoudenmire's examination and report of January 23, 2003.

Section 1614(a)(3)(J) of the Social Security Act, 42 U.S.C. § 1382(c)(a)(3)(J), provides that if an individual's drug or alcohol abuse is found to be a contributing factor material to a finding of disability, then the individual cannot be found eligible for disability benefits. In *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999), the Fifth Circuit held that the claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to her disability.

The claimant asserts that the ALJ erred in concluding that the claimant's past drug use was a substantial factor in her ability to perform substantial gainful employment because this conclusion depended on the ALJ's erroneous rejection of the opinion of the claimant's treating physician, Dr. Harbison, in favor of that of Dr. Stoudenmire. The claimant also contends that the ALJ erred in giving controlling weight to the medical opinion of Dr. Stoudenmire  The claimant

cites Social Security Regulation 96-2p to support these assertions.  It states that, "[If] a treating source's medical opinion is well supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight."  SSR 96-2p #6.  The rule goes on to state:

> [t]he opinion must come from a "treating source," as defined in 20 C.F.R. 404.1502 and 416.902.  Although opinions from other acceptable medical sources may be entitled to great weight, and may even be entitled to more weight than a treating source's opinion in certain circumstances, opinions from sources other than treating sources can never be entitled to "controlling weight."

The claimant also cites *Newton v. Apfel*, 209 F.3d 448 which stated:

> [T]he SSA "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion" and list factors an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight."  Specifically , this regulation requires consideration of:
> (1) the physician's length of treatment of the claimant,
> (2) the physician's frequency of examination,
> (3) the nature and extent of the treatment relationship,
> (4) the support of the physician's opinion afforded by the medical evidence of record,
> (5) the consistency of the opinion with the record as a whole, and
> (6) the specialization of the treating physician.

As an initial matter, the ALJ gave "significant weight", though not "controlling weight", to Dr. Stoudenmire's opinion.  By the same token, the ALJ chose not to give controlling weight to Dr. Harbison.  In reaching this conclusion, the ALJ noted that Dr. Harbison examined claimant on only two occasions, thereby demonstrating the lack of a longstanding treatment relationship.  The ALJ further concluded that Dr. Harbison's opinion should be given minimal weight because Dr. Harbison's opinion, unlike that of Dr. Stoudenmire, failed to take into account the claimant's substance abuse problem.  Dr. Harbison's treatment notes for August 26, 2004, mention "early

and often drug use" and that claimant has used crack cocaine, methamphetamine, and marijuana on a regular basis, "but reportedly has now been clean for a year." Dr. Harbison's October 20, 2004, treatment notes mention only that claimant smoked marijuana on one occasion since her initial examination. A letter from Dr. Harbison dated November 11, 2004, outlines some of claimant's limitations, but does not explain what role, if any, substance abuse plays in those limitations. The ALJ did not err in giving only minimal weight to Dr. Harbison's opinion based on Dr. Harbison's failure to mention drug abuse and the role it plays, if any, in claimant's limitations, and based on Dr. Harbison's lack of longstanding treatment relationship with the claimant.

The undersigned finds that there is substantial evidence in the record to support the conclusion that claimant has a prolonged substance abuse problem. On March 5, 2002, claimant was admitted to Forest Oaks Hospital, where she tested positive for cocaine, marijuana, and crystal methamphetamine. During her stay at Forest Oaks, Dr. Tucker diagnosed claimant with bipolar manic disorder, marijuana abuse, and cocaine abuse. During the consultative examination with Dr. Stoudenmire of January 23, 2002, claimant admitted to a history of drinking and smoking marijuana, although claimant neglected to mention her cocaine and crystal methamphetamine use. On August 22, 2003, claimant was admitted to Forrest General Hospital (Pine Grove). At that time, she admitted drinking a fifth of alcohol per day, and using marijuana and crack daily. She further explained that her alcohol abuse began at age six and marijuana abuse began at age fifteen. Claimant related that her longest period of abstinence was three weeks, when she was incarcerated. The ALJ noted that during a period of forced abstinence from drugs while being treated at Pine Grove, her global assessment of functioning score went from

8

15-20 up to 80-85 (reflecting absent or minimal symptoms).  In her testimony, claimant admitted to a history of cocaine and crystal meth abuse.  She also testified that she has been hospitalized many times and has been in detoxification programs for cocaine and crack.  The ALJ also noted evidence of drug seeking behavior reflected in the medical records.

Claimant counters that her testimony and her mother's testimony support a finding that claimant was drug free for a year prior to the hearing before the ALJ.  Claimant further argues that there is no evidence in the record to refute this contention.  The ALJ, however, did not believe that claimant was completely forthcoming regarding her substance abuse and found her testimony to be lacking in credibility.

It is not the role of this Court to re-weigh the evidence or to evaluate the credibility of witnesses.  The undersigned finds that substantial evidence supports the ALJ's decision to give minimal weight to Dr. Harbison regarding claimant's limitations, in particular the role that drug abuse plays in those limitations.  Moreover, the undersigned finds that substantial evidence supports the ALJ's finding that claimant has a prolonged history of drug abuse and that this drug abuse is a contributing factor to claimant's disability.

## RECOMMENDATION

Upon consideration of the pleadings, documents and evidence offered by the parties in support of their arguments, the record of the proceedings below, and the controlling law, the undersigned is of the opinion that the final decision rendered by the Commissioner is supported by substantial evidence and is in accord with relevant legal standards.  Accordingly, the undersigned recommends that the decision of the Commissioner be affirmed, and that Turnage's motion to reverse, or in the alternative to remand, should be denied.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1, any party who objects to this Recommendation must, within ten (10) days after being served a copy of the Recommendation, serve and file with the Clerk of Court his written objections to the Recommendation, with a copy to the District Judge, the U.S. Magistrate Judge and the opposing party. A party filing objections must identify specifically those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. A party's failure to file objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a *de novo* determination by the District Court. A party who fails to file written objections to the proposed findings, conclusions and Recommendation within ten (10) days after being served with a copy, shall be barred, except upon the grounds of plain error, from attacking on appeal any proposed factual finding and legal conclusion accepted by the District Court to which the party did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed this the 30th day of August, 2007.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE